UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

REGINA G.¹,                                     )
                                                )
            Plaintiff,                          )
                                                )
    v.                                          )       CIVIL NO. 3:19cv1189
                                                )
ANDREW M. SAUL,                                 )
Commissioner of Social Security,                )
                                                )
            Defendant.                          )

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant

Commissioner of Social Security Administration denying Plaintiff's application for Supplemental

Security Income (SSI) as provided for in the Social Security Act.  Section 205(g) of the Act

provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the

transcript of the record including the evidence upon which the findings and decision complained

of are based.  The court shall have the power to enter, upon the pleadings and transcript of the

record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

without remanding the case for a rehearing."  It also provides, "[t]he findings of the

[Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42

U.S.C. §405(g).

    The law provides that an applicant for disability benefits must establish an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to last for a continuous period of no less than 12

---

¹ For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings."  *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law."  *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1.       The claimant has not engaged in substantial gainful activity since December 8, 2016, the application date (20 CFR 416.971 *et seq.*).

2.       The claimant has the following severe impairments: attention deficit hyperactivity disorder (ADHD), anxiety, bipolar disorder, and depression (20 CFR 416.920(c)).

3.       The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404,Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

4.       After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to simple work-related decisions and simple, routine tasks with no assembly line work or strictly enforced daily production quotas.  The claimant is limited to few changes in a routine work setting. The claimant can never interact with the general public.  The claimant can work in proximity to other co-workers, but only with brief, incidental interaction with other co-workers and no tandem job tasks requiring cooperation with other co-workers to complete the task.  Additionally, the claimant could work where supervisors occasionally interact with her throughout the workday.

5.       The claimant has no past relevant work (20 CFR 416.965).

6.       The claimant was born on October 24, 1977 and was 39 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.       The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.       Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.       Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.       The claimant has not been under a disability, as defined in the Social Security Act, since December 8, 2016, the date the application was filed (20 CFR 416.920(g)).

(Tr. 23-29).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on May 22, 2020. On September 2, 2020 the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on October 12, 2020. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

According to Plaintiff's records, she has a long history of mental health treatment for which she was hospitalized inpatient at age 14 due to hearing voices. (R. 243-46). She had a past

history of use of Abilify, Celexa, Klonopin, Trazadone and alcohol abuse. (R. 264-65). She

had a history of homelessness in the past. (R. 264). She met with Jeffrey Samelson, PhD, at Sack

Clinical Consulting, who diagnosed her with moderate major depression. (R. 265). The goal listed

for treatment was improved mood and functioning. (R. 313). Two weeks later her progress was

noted as "variable". (R. 267). She treated with CNS, Michele Loughren. (R. 295-96). On

exam she was poorly groomed, had unkempt nails, was positive for past suicide attempts, positive

for apathy, anhedonia, depression and suicidal ideations. She reported having weeks when she

was depressed and then manic episodes with trouble focusing and impulsive behavior. (R. 297).

Upon examination, she had intermittent anxiety, constricted affect, her appearance was unkempt

and she had impaired insight and mildly impaired judgment. (R. 298). The plan was to restart her

medications. She had a global assessment functioning ("GAF") score of 45. (R. 299).

In August 2017, Dr. Samelson completed a mental RFC finding that Plaintiff would have a

marked limitation in working at an appropriate and consistent pace or complete tasks in a timely

manner. She could not ignore or avoid distractions, work in close proximity to others, sustain an

ordinary routine and regular attendance, work a full day or week without needing more than the

allotted number or length of rest periods, adapt to changes, manage psychologically based

symptoms, set realistic goals, make plans independently of others, handle conflicts with others,

respond to requests, suggestions, criticisms and corrections and keep social interactions free of

excessive irritability, sensitivity and argumentativeness. (R. 269-71). The same month she treated

with Dr. Samelson who noted she was "progressing" in therapy. (R. 274). In October she told

Loughren, "things aren't good, my fiancé has been living with us for a year and he's calling me

names and we are trying to get him evicted. I'm stressed, if I didn't have this stress I'd be really

good, the meds are really good". (R. 290). On exam, she had unkempt nails, was poorly groomed and she appeared very anxious. (R. 291). It was noted she had intermittent anxiety, impaired insight and mildly impaired judgment with a GAF of 45. (R. 293-94). Dr. Samelson's notes state that Plaintiff was "progressing". Despite this, recommendation was treatment every two weeks. (R. 305-10).

In April 2018, Plaintiff reported to Loughren, "I'm not doing good, my aunt who was like my mom, died in a car accident two weeks ago, I can't sleep". It was noted that she was sad and grieving. On exam she was poorly groomed and appeared anxious. (R. 286). She again was noted to have intermittent anxiety, impaired insight and mildly impaired judgment. (R. 288). The impression was ADHD and bipolar disorder. She was given sleep aid, Ambien and a GAF of 45 was prescribed. (R. 288-89).

In August, Dr. Samelson completed a RFC that Plaintiff could not follow work rules, relate to coworkers, deal with the public, interact with supervisors, deal with work related stresses and maintain attention and concentration. She could not understand, remember and carry out job instructions, behave in an emotionally stable manner, relate predictably in a social manner and deal with changes in a routine setting. She would be off task 20% of the workday and miss more than four work days per month. (R. 277-78). At that visit, her progress was noted as "variable". (R. 304). Loughren completed a RFC that Plaintiff would have poor concentration, trouble with focus and staying on task, poor motivation, was easily stressed and anxious, could not behave in an emotionally stable manner, relate predictably in a social manner, could not always respond appropriately to supervisors and coworkers, would be off-task more than 25% of the workday and miss more than four days of work per month. She was not capable of sustaining work on a

6

sustained basis. (R. 301-02).

At the time of the hearing, Plaintiff was 40. She was living with her 93 year old grandmother. (R. 42). She did not drive. (R. 42). Her aunt took her to counseling and her dad took her to the hearing. (R. 43). She entered the ninth grade in school but did not complete the grade. (R. 43). She could not work due to her anxiety and bipolar disorder. She did not like to be in groups or around too many people. (R. 43). She could be around one or two people for a bit but then felt like the walls were closing in. Plaintiff did not go out of the house a lot. (R. 44). In terms of her bipolar disorder, she was withdrawn a lot from friends and family and had manic episodes. (R. 45). She also heard voices a lot. (R. 45). The depression had kept her from friends and family. She had lost interest in activities or going places. (R. 45). Plaintiff had problems with personal hygiene and it was hard for her to get out of bed. (R. 46). ADHD impacted her ability to stay focused and complete tasks. (R. 47). She had anxiety which affected her, making her become irritable and anxious frequently. (R. 47-48). She also had problems with sleeping. Somedays she would sleep long periods and other times she could go a day or two without sleeping. (R. 48-49). Plaintiff needed reminders. When Plaintiff had a job for two days she could not remember what she was supposed to do. (R. 49). Plaintiff required redirection pretty frequently. (R. 49-50). Plaintiff also had paranoia. (R. 50). A typical day was lying in bed all day. (R. 51). Her cousin would come over and cook and do cleaning. (R. 52). Plaintiff stopped going to counseling because it made her uncomfortable. (R. 52).

In 2017, Plaintiff's father completed a third-party form. (R. 179-86). He explained that Plaintiff stayed indoors in her bedroom and watched television most of the day. (R. 179, 183). She rarely did laundry, did not clean up often and frequently wore the same clothes. (R. 180). She

needed reminders when she was being neglectful. She did not do microwavable foods often. Plaintiff was not able to do many chores and needed reminders. (R. 181). She very rarely left the house due to depression and anxiety and got nervous around others. (R. 182). If she got groceries, she did it once a month and quickly. She could not pay bills and she neglected a lot of things. (R. 182). Plaintiff was not responsible with money. (R. 183). Plaintiff had frequent mood swings due to her bipolar disorder impacting her ability to get along with people and impacted concentration and her ability to complete tasks. (R. 184). She was not good with spoken instruction and had difficulty staying focused with written instructions. (R. 184). She had problems getting along with others and had anxiety attacks. (R. 185).

Plaintiff has a short work history as a cleaner at a hotel for two days, a janitor and as a packer at a factory that did not last long. (R. 171). Her work record shows that she did not hold down jobs very long, working for approximately 30 employers between 2001 and 2016. (R. 160-64).

In support of remand Plaintiff first argues that she meets or equals the Listing for depressive, bipolar disorder under 20 C.F.R. Pt. 404, subpt. P, App. 1, § 12.04(B)(2), (4) with marked limitations in interacting with others and in adapting or managing herself.

Plaintiff claims that the record fails to support the ALJ's conclusion that she has only a moderate limitation in interacting with others. (R. 24). As the ALJ notes, Plaintiff reported her depression and bipolar disorder caused her to be withdrawn from friends and family. She indicated frequent outbursts of anger and constant fears of being around people. She did not leave the house often as a result. (R. 43-44). This is consistent with what she wrote in her functional report. (R. 199-201). She was not social at all, most of the time would not even answer the phone and

avoided social interactions. (R. 199, 201). Plaintiff reported frequent outbursts of anger. She did not get along well with others. (R. 200-01). This is confirmed in Plaintiff's father's third-party statement where he wrote that she would get nervous around others, very rarely left the house, frequently had mood swings that impacted her ability to get along with others and had anxiety attacks. (R. 182-85). The field office interviewer noted that Plaintiff was "very nervous". (R. 177).

At visits, Loughren noted that Plaintiff was positive for anxiety. (R. 286, 288, 291, 293-94, 298). Plaintiff's work record shows that she could not hold down jobs very long. 160-64); *See e.g., Miller v. Colvin*, 3:13-CV-380 JD, 2014 WL 4105034, at *14 (N.D. Ind. Aug. 19, 2014)(the ALJ relied on these facts without mentioning the glaring fact that Miller's hygiene was repeatedly documented as being unacceptable and his employment history actually consisted of over 35 unskilled jobs which didn't last long due to his inadequate performance and inability to handle the resulting criticism). Dr. Samelson twice made findings supportive of marked social restrictions (R. 269-71, 277-78) as did CNS Loughren. (R. 301-02). In particular Plaintiff "doesn't get along with co-workers" (R. 277) and she had "difficulty with social stress and conflicts". (R. 271). Plaintiff argues that this line of evidence fails to support the ALJ's conclusion that Plaintiff could handle brief interactions with coworkers or occasional interactions with supervisors. (R. 25).

Plaintiff argues that the ALJ erred by not explaining or citing evidentiary support for his determination that Plaintiff had the RFC to work in proximity to others and tolerate occasional interaction with supervisors. SSR 96-8p; *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005); *Jayson J. v. Saul*, 2020 WL 597657, *16 (N.D.Ind. 2020). Here, the ALJ did not address the evidence of anxiety noted in the records nor the fact that Plaintiff had difficulty retaining jobs. Moreover, despite this long line of evidence regarding social dysfunction, the ALJ did not explain

9

how he made the determination that Plaintiff could interact incidentally with coworkers and

occasionally with supervisors even with frequent outbursts and anger due to bipolar disorder and

depression. (R. 28); *see also* SSR 83-10 ("'Occasionally' means occurring from very little up to

one-third of the time.") Plaintiff contends that the ALJ violated SSR 96-8p by failing to explain or

cite evidentiary support for his RFC limitation on Plaintiff's social interaction ability. (R. 24, 28);

*Briscoe*, 425 F.3d at 352. Moreover, to the extent the ALJ is relying upon the Agency opinion for

social functioning, the doctor lacked critical records to inform his decision. For these reasons

Plaintiff argues the ALJ erred in assessing deficits in interacting with others.

As to adapting and managing herself, §12.00(E)(4) explains that one example would be

maintaining appropriate hygiene and attire. The ALJ acknowledged that the record reflected an

unkempt appearance. (R. 25). This is consistent with Plaintiff's statement that she did not bathe or

dress much due to lacking motivation (R. 195), and is also consistent with her father's opinion. (R.

180). It is further consistent with that of the consultative examiner who noted "poor hygiene",

which the ALJ did not address. (R. 262). As to finding this area mildly limited, the ALJ simply

wrote that there are no other significant concerns noted in this area. (R. 25). Plaintiff argues that it

is unclear why this is pertinent as §12.00(E)(4) specifically states, "we do not require

documentation of all of the examples". For these reasons, Plaintiff argues that the ALJ erred in his

evaluation of social functioning and adapting and managing one's self and Listing 12.04 should

have been met or medically equaled. Plaintiff also notes that the ALJ has failed to address and

consider much of this evidence in reaching his Step Three determination. *See Ribaudo v.*

*Barnhart*, 458 F.3d 580, 584 (7th Cir.2006) ("Although the ALJ is not required to mention every

piece of evidence in the record, his failure here to evaluate any of the evidence that potentially

supported Ribaudo' claim does not provide much assurance that he adequately considered

Ribaudo's case") (internal citations omitted).

At Step Three, if an adult's impairment "meets or equals one of the listed impairments, the

claimant is conclusively presumed to be disabled". *Bowen v. Yuckert*, 482 U.S. 137, 141, 107

S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987). Here, Plaintiff maintains that the record supports

such a conclusion. Instead of responding to arguments raised at Step Three, the Commissioner

simply asserts that the "ALJ adequately explained his reasoning in reaching the RFC". The

Commissioner contends that because Plaintiff could function in a compassionate environment of

psychological appointments, the ALJ's analysis was correct. However, even at the visits

referenced by the Commissioner, Plaintiff was positive for anxiety. (R. 286, 288, 291, 293-94,

298). She had 30 employers between 2001 and 2016, raising the inference that she either had

inadequate performance or problems dealing with others. This evidence was not considered by the

Agency doctor nor the ALJ. (R. 81). The ALJ did not address the evidence of anxiety noted in the

records nor the fact that Plaintiff had difficulty retaining jobs. To the contrary, he stated that "she

was able to hold a job, function and have stable moods while on medication". (R. 27)

In response, the Commissioner does not explain why the ALJ is correct other than

asserting the ALJ "adequately explained" his analysis. It is unclear how an individual with poor

hygiene would be continually employable. There is no accounting for this in the RFC. Further,

pursuant to the Listing, the ALJ does not explain why this example, noted in the Listing, is not

sufficient to support a marked limitation.

This Court finds that the ALJ failed to consider and analyze all of the evidence which

arguably supports a finding that a Listing has been met or equaled.  Therefore, remand is required

on this issue.

Next, Plaintiff argues that the ALJ erred in translating moderate deficits in concentration, persistence or pace into the RFC. Both an ALJ's RFC and hypothetical question must incorporate any limitations supported by the claimant's medical record, including specifically identified limitations in concentration, persistence, or pace. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *DeCamp v. Berryhill*, 916 F.3d 671, 675 (7th Cir. 2019) (per curiam). The Seventh Circuit recently highlighted the "recurring error" that happens when an ALJ simply limits a claimant to "unskilled work" in order to incorporate a claimant's full range of limitations in concentration, persistence, or pace. *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (collecting cases)*; see also O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010) (citation omitted) ("In most cases ... employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace."). The Seventh Circuit has "labored mightily to explain" that "the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace." *Martin*, 950 F.3d at 373 (citation omitted).

In this case, the ALJ found Plaintiff had moderate limitations in concentration, persistence or pace. (R. 24). In the RFC, the ALJ found that Plaintiff could perform simple routine tasks, perform simple work-related decisions and was restricted from assembly line work or strictly enforced daily production quotas. (R. 25). Plaintiff argues that posing to the VE a hypothetical limiting Plaintiff to "unskilled work" with no "fast-paced production line or tandem tasks" does not suffice to account for a moderate limitation on concentration, persistence, and pace. *DeCamp*,

12

916 F.3d at 675-76 ("We have previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace.")(citing *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) and *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698-99 (7th Cir. 2016)). Additionally, an ALJ's hypothetical does not sufficiently account for moderate limitations in concentration, persistence and pace by limiting the claimant to "exercis[ing] simple work place judgments," in addition to routine work, simple instructions, and no more than occasional changes in the workplace setting. *Moreno*, 882 F.3d at 730.

In the present case, Plaintiff argues that the ALJ took just the sort of shortcut that the Seventh Circuit proscribed in the above cases by failing to connect the limitations included in the hypothetical to Plaintiff's documented difficulties in concentration, persistence, or pace. Here, it is well documented that Plaintiff suffers from ongoing anxiety. (R. 267, 286, 288-89, 291-94, 297-99, 304). She has also been diagnosed with ADHD. (R. 288-89). Dr. Samelson found she had difficulty focusing, was easily distracted and anxious. (R. 270). She would be off task 20% of the workday. (R. 278). Plaintiff thus contends that limiting Plaintiff to jobs that required her to perform only simple, routine tasks and make simple decisions without having to maintain a "production rate pace" does not account for the possibility that, given her moderate difficulties in concentration, persistence, and pace, Plaintiff might not be able to "do so on a sustained basis" at any pace, even a slow one. *Crump*, 932 F.3d at 570. Indeed, later in the decision the ALJ noted Plaintiff had difficulty focusing and following directions due to ADHD (R. 27) but failed to explain how this would be accommodated by the limitations provided.

13

As the RFC does not fully account for Plaintiff's limitations in concentration, persistence and pace, remand is required on this issue.

Next Plaintiff argues that the ALJ's subjective symptom analysis is flawed and legally insufficient. An ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012). Nevertheless, an ALJ must explain his evaluation with specific reasons that are supported by the record. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013). An ALJ must assess the claimant's subjective symptoms rather than assessing her "credibility." SSR 16-3p.

Under SSR 16-3p, the ALJ first must determine whether the claimant has a medically determinable impairment that reasonably could be expected to produce her symptoms. SSR 16-3p. Then, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p. An individual's statements about the intensity and persistence of the pain may not be disregarded simply because they are not substantiated by objective medical evidence. SSR 16-3p. In determining the ability of the claimant to perform work-related activities, the ALJ must consider the entire case record, and the decision must contain specific reasons for the finding. SSR 16-3p. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(i) The individual's daily activities;
(ii) Location, duration, frequency, and intensity of pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) Type, dosage, effectiveness, and side effects of any medication;
(v) Treatment, other than medication, for relief of pain or other symptoms;

(vi) Other measures taken to relieve pain or other symptoms;
(vii) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 416.929(c)(3).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. The ALJ further found, however, the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record. (R. 27). The ALJ addressed daily activities, finding that Plaintiff stayed in bed all day and watched television but she did her best to care for her grandma, usually cooked her dinner daily and cared for her dog. (R. 27). However, Exhibit 5E addresses that Plaintiff could rarely go out to do laundry, did not bathe much because she lacked motivation (R. 195) and in terms of meals she wrote that "sometimes I don't eat for a day or two (depression)" and "I can't get motivated and sometimes I just won't eat altogether". (R. 196). She did very little around the house and always had piles of laundry that did not get done. (R. 196). She had a dog and "do my best to take care of her" but her fiancé helped take care of the dog. (R. 195). Family members would shop for her. Her bills would get neglected as she was not good with tracking things. (R. 197). Plaintiff had bad anxiety issues and feared going outside especially in public. (R. 197).

An ALJ may consider a claimant's daily activities when evaluating the claimant's credibility so long as it is done "with care." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). "An ALJ cannot disregard a claimant's limitations in performing household activities." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009). The ALJ should explain any purported inconsistencies between the claimant's daily activities, subjective complaints, and the medical evidence in the

record. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). In this case, Plaintiff argues that the ALJ did not properly state Plaintiff's daily activities nor did he explain any inconsistencies between the daily activities and the medical evidence.

The ALJ opined that Plaintiff received conservative and routine treatment for her severe mental impairments. (R. 27). In reality, Plaintiff sought treatment with Dr. Swanson every two weeks (R. 304) and despite this treatment, her progress most recently was noted as variable. (R. 304). She was medicated with strong antipsychotic medication, sedatives as well as Adderall for ADHD during the relevant period. *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014) (the fact that doctor's prescribed claimant drugs indicated that claimant's alleged symptoms were real). "[Plaintiff's] doctors must have seen signs of severe symptoms if they were willing to prescribe antipsychotic, anti-insomnia, antidepressant, and anti-anxiety drugs for [her] alleged symptoms". *Antonio P. v. Saul*, 2:19CV375, 2020 WL 1910345, at *14 (N.D. Ind. Apr. 20, 2020); *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004) (improbable that doctors would prescribe claimant drugs if they thought they were faking symptoms). As held in *Antonio P*, the ALJ was not qualified to second guess these medical professionals opinions and the ALJ should have explained how he considered Plaintiff's medication. SSR 16-3p; *Antonio P*., 2:19CV375, 2020 WL 1910345, at *14 citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014).

Plaintiff correctly states that the absence of hospitalizations after Plaintiff's alleged onset date is not a good reason for discounting a medical opinion. *Bartell v. Cohen*, 445 F.2d 80, 83 (7th Cir. 1971) ("Obviously, hospitalization is cogent evidence that an applicant is disabled; however, the absence of hospitalization for degenerative arthritis is not substantial evidence that an applicant can perform a specific occupation."). The Seventh Circuit has held that hospitalization is

16

reserved for those who cannot care for themselves or who appear dangerous to themselves, not people who cannot work competitively. *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) (citing *Browning v. Colvin*, 766 F.3d 702, 705 (7th Cir. 2014); *Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014); *Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009)).

The ALJ states that Plaintiff admitted to improvement with the use of medications citing Exhibit 7F/12. However, this Exhibit appears to be a form text from the initial assessment. (R. 290). It is directly negated by other parts of this same record that states that Plaintiff is not doing well, has trouble focusing and was unable to concentrate (R. 290), was poorly groomed with unkempt nails, a bit dirty, appeared anxious (R. 291), had intermittent anxiety on examination as well as impaired insight and judgment (R. 293) and a GAF of 45. (R. 294). It is clear that Plaintiff was on her medications during this relevant period and despite this the most recent treatment notes show that stressors were "severe", Plaintiff had a GAF of 45 (R. 283), and suffered from ongoing anxiety, impaired insight and judgment (R. 283). Dr. Samelson thus listed progress as variable (R. 304). As noted above, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence. *Arnett*, 676 F.3d at 592.

The ALJ also points to the fact that Plaintiff stated that she was able to hold down a job when she was on medication. (R. 27). Yet this is at odds with her earnings record (R. 160-64) and the fact that her most recent job she held lasted two days as she could not learn how to do the required tasks. (R. 49, 171). Again, this evidence is not addressed in the ALJ's decision. (R. 27) Finally, the ALJ contends that despite meeting regularly with Dr. Samelson and Ms. Loughren, examinations were normal and there was no exacerbation of symptoms. (R. 27). Yet, as addressed above, examinations were not normal. The ALJ makes no mention of the fact that Plaintiff was

unkempt, that she had anxiety observed at every appointment, that she had impaired judgment and

insight and that she consistently had GAF scores of 45. (R. 267, 286, 288-89, 291-94, 297-99,

304); *Cox v. Saul*, 2:18-CV-00355-JD-SLC, 2019 WL 7605812, at *5 (N.D. Ind. Aug. 15, 2019),

report and recommendation adopted, 2:18-CV-355-JD, 2019 WL 5168656 (N.D. Ind. Oct. 15,

2019)(the ALJ "failed to include [the limitations indicated by the GAF scores] or sufficiently

explain why they should not be included" in determining Cox's mental limitations); *Beaver v.

Berryhill*, No. 2:17-CV-349-JEM, 2018 WL 4377701, at *3 (N.D. Ind. Sept. 14, 2018).

Moreover, the ALJ is incorrect as Dr. Samelson's most recent record had listed progress as

"variable" (R. 304) and Ambien had been more recently added (R. 289) due to worsening

symptoms. (R. 285). Clearly, the ALJ failed to build an accurate and logical bridge between

evidence and conclusion in addressing Plaintiff's subjective symptoms.

 In response, the Commissioner argues that the ALJ provided a good rationale for rejecting

subjective symptoms including that Plaintiff did not comply with treatment for several months.

However, this is not a sound basis for discounting subjective symptoms. *Kangail v. Barnhart*, 454

F.3d 627, 630 (7th Cir. 2006); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir.

2009) ("For some mental disorders, the very failure to seek treatment is simply another symptom

of the disorder itself.") "If mental health issues played a role in the lack of treatment, inconsistent

treatment, or erratic compliance with treatment, then an adverse credibility decision based on these

expressions of poor mental health is improper". *Butler-Jones v. Berryhill*, 1:17-CV-140-TLS,

2018 WL 948477, at *5 (N.D. Ind. Feb. 20, 2018).

 With respect to medical records, as Plaintiff points out, they were not largely normal.

Rather, Plaintiff presented with intermittent anxiety, mildly impaired judgment and a GAF of 45.

(R. 288-89, 293-94, 298-99). A GAF score between 41 and 50 denotes "[s]erious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job)." *Williams v. Colvin*, No. 13–3607, 2014 WL 2964078, at *3 (7th Cir. July 2, 2014)(quoting Am. Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) ("DSM")).

The Commissioner states that a "controllable" condition does not entitle one to benefits. However, as Plaintiff argues, to the extent there was some improvement with treatment, this does not support the Commissioner's argument that Plaintiff's condition was controlled. *See e.g.,* *Barnes v. Colvin*, 80 F. Supp. 3d 881, 889 (N.D. Ill. 2015). "Improvement" by itself does not demonstrate a lack of disabling symptoms. *Salazar v. Colvin*, No. 13 C 9230, 2015 WL 6165142, at *4 (N.D. Ill. Oct. 20, 2015) ("The ALJ's reliance on the stated 60% improvement is meaningless because she failed to establish a baseline from which the stated improvement can be measured ... It is unclear exactly what functional limitations may remain even after as much as a 60% improvement in his condition.").

The Commissioner next argues that Plaintiff's statement that she can work while medicated contradicts the evidence  that she has held over 30 jobs between 2001 and 2016. (R. 160-64). As Plaintiff notes, this is a fact the ALJ failed to consider and thus is a *post hoc* argument. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010)( But the problem with this approach is that it runs into the *Chenery* doctrine, which "forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced.").

Finally, as to daily activities, the Commissioner states that the ALJ "did not rely on those activities as a means to discount her allegations". It is entirely unclear from the Decision what the

ALJ concluded from the statements regarding daily activities. Apparently the ALJ rejected Plaintiff's allegations as to daily activities without explanation. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)(requiring an accurate and logical bridge between evidence and result).

Clearly, as the discussion above indicates, remand is required on the issues arising from the ALJ's treatment and analysis of Plaintiff's subjective symptoms and activities of daily living.

Next, Plaintiff argues that the ALJ erred in evaluating third party evidence. The regulations require an ALJ to consider all of the available evidence from a claimant's medical and nonmedical sources. 20 C.F.R. § 416.929(c)(1); 20 C.F.R. § 416.913(a)(4) ("Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim. We may receive evidence from nonmedical sources...."); 20 C.F.R. 416.945(a)(3) (in assessing RFC, "[w]e will also consider descriptions and observations of your limitations from your impairments(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons."). An ALJ "generally should explain the weight given to opinions from [non-medical] sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 416.927(f)(2); *Kenneth S. v. Saul*, 18 C 5047, 2020 WL 419418, at *4 (N.D. Ill. Jan. 27, 2020).

In the present case the ALJ found that Plaintiff's father completed a third party report stating that Plaintiff did not leave the house and had difficulty staying focused and following instructions. (R. 28). Plaintiff argues that the ALJ did not build an accurate and logical bridge between evidence and result. (R. 28). The ALJ affords the father's opinion "some weight" as the

20

father's statements are consistent with the record. (R. 28) Plaintiff argues that the ALJ has not

explained what portions of the father's opinion he was affording any weight. 20 C.F.R.

§416.927(f) explains that the ALJ generally should explain the weight given to opinions or

otherwise ensure that the discussion of the evidence allows a reviewing court to follow the ALJ's

reasoning. Factors to consider in weighing the opinion are detailed in 20 C.F.R. §416.927(c).

The Commissioner argues that the ALJ adequately considered Plaintiff's father's statement

and explained the weight to which it deserved. Yet the ALJ found that "his statements are

consistent with the record". (R. 28). The ALJ did not state that Plaintiff's father's statements were

only consistent with those of Plaintiff, as the Commissioner argues in his response. Nor did the

ALJ articulate any other conflict with the record. Also, the ALJ did not explain why Plaintiff's

own allegations of daily activities were rejected.

Clearly, this area of the Decision needs to be clarified to ensure that the pertinent

regulations are being followed.  Thus, remand is warranted.

Lastly, Plaintiff argues that the ALJ erred in weighing the medical opinion evidence. The

opinion of a treating source is entitled to controlling weight if the opinion "is well-supported by

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

other substantial evidence in [the] record." 20 C.F.R. § 416.927(c)(2); *Kaminski v. Berryhill*, 894

F.3d 870, 874, 874 n.1 (7th Cir. 2018) (for claims filed before March 27, 2017, an ALJ "should

give controlling weight to the treating physician's opinion as long as it is supported by medical

findings and consistent with substantial evidence in the record."). An ALJ must "offer good

reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306

(7th Cir. 2010)(internal quotation marks and citations omitted); *see also Walker v. Berryhill*, 900

F.3d 479, 485 (7th Cir. 2018). Those reasons must be "supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)(citation omitted); *see* 20 C.F.R. § 416.927(c).

In this case, Dr. Samelson offered two medical opinions at Exhibit 4F and 6F. The ALJ afforded both little weight. (R. 28). Plaintiff argues that the ALJ did not address the regulatory factors of 20 C.F.R. § 416.927(c). Plaintiff notes that Dr. Samelson was Plaintiff's treating psychologist and responsible for Plaintiff's treatment. Moreover, as noted above, his records along with those of CNS Loughren continue to list a GAF of 45, that Plaintiff had anxiety, limited insight and judgment and was unkempt. (R. 267, 286, 288-89, 291-94, 297-99, 304)

Plaintiff also argues that, while a clinical nurse specialist, such as Loughren, was not an acceptable medical source at the time of filing in this case, under the new regulations a clinical nurse specialist is an acceptable medical source. Plaintiff argues that the ALJ did not address any of the regulatory factors of 20 C.F.R. §416.927(c) with respect to CNS Loughren. Plaintiff concludes that the ALJ failed to give weight to any of Plaintiff's treating sources, failed to explain how the medical evidence in the record supported the RFC, and cherry-picked and mischaracterized evidence to support his conclusion. *Noak v. Saul*, 2:18-CV-288-JEM, 2020 WL 1164432, at *5 (N.D. Ind. Mar. 11, 2020) citing *Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) ("When an ALJ denies benefits, she must build an 'accurate and logical bridge from the

evidence to her conclusion,' and she is not allowed to "play doctor" by using her own lay opinions

to fill evidentiary gaps in the record.") (quoting *Clifford*, 227 F.3d at 872) (other citations

omitted).

Plaintiff points out that the ALJ afforded the most deference to the Agency opinion which

he purported to afford "some weight" as it was somewhat consistent with the record. (R. 27). Yet

the opinion references a GAF of 55 from prior to the onset date. (R. 81). Moreover, the examiner

only reviewed records through August 2017 suggesting that Plaintiff was "stable". (R. 78, 82).

Thus, the examiner only reviewed half the file and the majority of the treatment notes from March

2017 through August 2018 were contained later in the file, representing 42 pages of treatment or

medical opinions which the examiner did not review. He did not review any of the treatment notes

from CNS Loughren or the ongoing GAF scores of 45. The examiner was also unaware of

medication management which is all contained at R. 274-316 including an antipsychotic and

medication for ADHD. The examiner also lacked pertinent evidence as to Plaintiff's appearance

and sparse job history. *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) ("ALJs may not

rely on outdated opinions of agency consultants 'if later evidence containing new, significant

medical diagnoses reasonably could have changed the reviewing physician's opinion.' ") (quoting

*Moreno* 882 F.3d at 728). Plaintiff notes that it does not appear that the ALJ recognized this fact

in his Decision. (R. 27).

Rather, as discussed above, the ALJ stated that due to ADHD and bipolar disorder Plaintiff

had a moderate limitation in understanding, remembering and applying information. (R. 27). Yet, it

is unclear how this is determined based on the evidence. *Meuser v. Colvin*, 838 F.3d 905, 911 (7th

Cir. 2016) ("[T]he ALJ improperly played doctor when he ignored expert opinions to arrive at his

own, incorrect, interpretation of the medical evidence."). Moreover, it is further unclear how this limitation was then translated into vocational terms. SSR 96-8p. The ALJ further found that Plaintiff was restricted from assembly work or strict production quotas due to difficulty focusing and following instructions due to her ADHD. She was limited to simple, routine tasks and simple work-related decisions. (R. 27). Yet, the ALJ does not point to the evidence that supports this restriction. SSR 96-8p. Indeed, Plaintiff's most recent job position was as a cleaner at a hotel, specifically the type of job the ALJ found Plaintiff capable of performing, and it only lasted two days as Plaintiff could not pick up the tasks fast enough. (R. 29, 49, 171). Finally, the ALJ found that due to anger and frequent outbursts, Plaintiff could, up to 1/3 of a workday, interact with coworkers or supervisors. (R. 28). Yet, as stated above, the evidence fails to support such a determination and the ALJ again does not provide evidence other than citation to Exhibit 5E which details problems getting along with others which conflicts with the ALJ's ultimate RFC. (R. 199-200); *See e.g., Allensworth v. Colvin*, 814 F.3d 831, 835 (7th Cir. 2016)(Although the administrative law judge concluded that the plaintiff can perform light work for 40 hours a week, she did not indicate what evidence supported that conclusion—a fatal error).

With respect to the opinion of Dr. Samelson, his records along with those of CNS Loughren continue to list a GAF of 45 (totally ignored by the ALJ), that Plaintiff had anxiety, limited insight and judgment and was unkempt. (R. 267, 286, 288-89, 291-94, 297-99, 304). The ALJ did not mention any of this evidence when making a blanket assertion citing generally to Exhibit 9F that examinations were "normal". (R. 28); *see Spicher v. Berryhill*, 989 F.3d 754, 757 (7th Cir. 2018); *Brown v. Berryhill*, 2018 WL 3768979 at *3 (N.D. Ind. Aug. 9, 2018). The Commissioner points to one record to suggest that appearance was appropriate and behavior

24

unremarkable. *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (a snapshot of any single moment of a claimant's mental illness says little about their overall condition); *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008).

Nor did the ALJ address any of the regulatory factors, only mentioning that Dr. Samelson was a psychologist. The Commissioner cites to the case of *Shingler v. Berryhill*, 2:16-CV-499-JVB-JEM, 2018 WL 3301840, at *3 (N.D. Ind. July 5, 2018), but in *Shingler*, the ALJ addressed the treating relationship, the amount of time the relationship occurred, inconsistencies in the record and that conclusions were based on subjective symptoms, unlike the case herein.

As the ALJ did not properly evaluate the medical opinions, remand is required on this issue also.

Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby REVERSED AND REMANDED, in accordance with the above Opinion.

Entered: October 23, 2020.

s/ William C.  Lee
William C. Lee, Judge
United States District Court